UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | | |
|---|---|---|
| JENNIFER L. LEMELLE, | ) | No. ED CV 16-1320-PLA |
| Plaintiff, | ) | **MEMORANDUM OPINION AND ORDER** |
| v. | ) | |
| NANCY BERRYHILL, ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) | |
| Defendant. | ) | |

I.

**PROCEEDINGS**

Plaintiff filed this action on June 22, 2016, seeking review of the Commissioner's[1] denial of her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on July 22, 2016, and August 19, 2016. Pursuant to the Court's Order, the parties filed a Joint Submission (alternatively "JS") on February 27, 2017, that addresses their positions

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy Berryhill, the current Acting Commissioner of Social Security, is hereby substituted as the defendant herein.

1 | concerning the disputed issues in the case.  The Court has taken the Joint Submission under
2 | submission without oral argument.

3

4 | II.

5 | **BACKGROUND**

6 | Plaintiff was born on May 23, 1975. [Administrative Record ("AR") at 33, 127, 196, 198.]
7 | She has past relevant work experience as a customer service clerk in combination with account
8 | executive, and as a home attendant. [AR at 57-59, 127.]

9 | On February 6, 2012, plaintiff protectively filed an application for a period of disability and
10 | DIB, and on February 8, 2012, she filed an application for SSI payments, alleging that she has
11 | been unable to work since March 14, 2009. [AR at 118, 196, 198.] After her applications were
12 | denied initially and upon reconsideration, plaintiff timely filed a request for a hearing before an
13 | Administrative Law Judge ("ALJ"). [AR at 118, 148.] A hearing was held on October 22, 2013,
14 | at which time plaintiff appeared represented by an attorney, and testified on her own behalf. [AR
15 | at 28-68.] A vocational expert ("VE") also testified. [AR at 31-66, 51-53.] On February 19, 2014,
16 | the ALJ issued a decision concluding that plaintiff was not under a disability from March 14, 2009,
17 | the alleged onset date, through February 19, 2014, the date of the decision. [AR at 118-29.]
18 | Plaintiff requested review of the ALJ's decision by the Appeals Council. [AR at 26.] When the
19 | Appeals Council denied plaintiff's request for review on September 25, 2015 [AR at 12-16], the
20 | ALJ's decision became the final decision of the Commissioner. See Sam v. Astrue, 550 F.3d 808,
21 | 810 (9th Cir. 2008) (per curiam) (citations omitted).  This action followed.

22

23 | III.

24 | **STANDARD OF REVIEW**

25 | Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's
26 | decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial
27 | evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622
28 | F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

1   "Substantial evidence means more than a mere scintilla but less than a preponderance;
2   it is such relevant evidence as a reasonable mind might accept as adequate to support a
3   conclusion." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1159 (9th Cir. 2008)
4   (citation and internal quotation marks omitted); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir.
5   1998) (same).   When determining whether substantial evidence exists to support the
6   Commissioner's decision, the Court examines the administrative record as a whole, considering
7   adverse as well as supporting evidence. Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001)
8   (citation omitted); see Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("[A]
9   reviewing court must consider the entire record as a whole and may not affirm simply by isolating
10   a specific quantum of supporting evidence.") (citation and internal quotation marks omitted).
11   "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should
12   be upheld." Ryan, 528 F.3d at 1198 (citation and internal quotation marks omitted); see Robbins
13   v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either
14   affirming or reversing the ALJ's conclusion, [the reviewing court] may not substitute [its] judgment
15   for that of the ALJ.") (citation omitted).

16
17                                            **IV.**
18                          **THE EVALUATION OF DISABILITY**
19        Persons are "disabled" for purposes of receiving Social Security benefits if they are unable
20   to engage in any substantial gainful activity owing to a physical or mental impairment that is
21   expected to result in death or which has lasted or is expected to last for a continuous period of
22   at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th
23   Cir. 1992).

24
25   **A.    THE FIVE-STEP EVALUATION PROCESS**
26        The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing
27   whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821,
28   828 n.5 (9th Cir. 1995), as amended April 9, 1996.  In the first step, the Commissioner must

determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. part 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. Id. The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy. Id. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

## B.     THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since March 14, 2009, the alleged onset date.[2] [AR at 120.] At step two, the ALJ concluded that plaintiff has the severe impairments of migraines; disorder of the cervical spine; and depression. [Id.] At step three, the ALJ determined that plaintiff does not have an impairment or a combination

---

[2]     The ALJ concluded that plaintiff met the insured status requirements of the Social Security Act through September 30, 2014. [AR at 120.]

4

of impairments that meets or medically equals any of the impairments in the Listing. [AR at 121.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[3] to perform less than the full range of light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b),[4] as follows:

> [Plaintiff] would be restricted to the following:  lifting and carrying no more than 20 pounds occasionally and 10 pounds frequently; pushing and pulling within these weight limits on an occasional basis; standing and walking six hours out of an eight-hour workday, with no prolonged walking greater than 30 minutes at a time; sitting six hours out of an eight-hour workday with the ability to stand and stretch, for one minute at the end of each hour, not to exceed 10 percent of the day; no ladders, ropes, or scaffolds; no work hazards such as working at unprotected heights, working on or with dangerous or fast moving machinery, or driving commercial vehicles; unskilled work; simple, routine, repetitive tasks; and occasional contact with the public, coworkers and supervisors.

[AR at 123.]  At step four, based on plaintiff's RFC and the testimony of the VE, the ALJ concluded that plaintiff is unable to perform any of her past relevant work in the combination position of customer service clerk and account executive, and as a home attendant. [AR at 59-60, 127.] At step five, based on plaintiff's RFC, vocational factors, and the VE's testimony, the ALJ found that there are jobs existing in significant numbers in the national economy that plaintiff can perform, including work as a "mail clerk" (Dictionary of Occupational Titles ("DOT") No. 209.687-026), "photo copy machine operator" (DOT No. 207.685-014), and "folder" (DOT No. 369.687-014). [AR at 60, 128.] Accordingly, the ALJ determined that plaintiff was not disabled at any time from the alleged onset date of March 14, 2009, through February 19, 2014, the date of the

---

[3]   RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).  "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

[4]   "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."  20 C.F.R. §§ 404.1567(b), 416.967(b).

1 | decision.  [AR at 128.]

2

3 | **V.**

4 | **THE ALJ'S DECISION**

5 | Plaintiff contends that the ALJ erred when she:  (1) granted little or no weight to the

6 | physical function assessment of treating pain management specialist Navdeep Loomba, M.D.,

7 | and (2) rejected plaintiff's subjective symptom testimony.  [JS at 5.] As set forth below, the Court

8 | agrees with plaintiff, in part, and remands for further proceedings.

9

10 | **A.    MEDICAL OPINIONS**

11 | **1.    Legal Standard**

12 | "There are three types of medical opinions in social security cases:  those from treating

13 | physicians, examining physicians, and non-examining physicians." Valentine v. Comm'r Soc. Sec.

14 | Admin., 574 F.3d 685, 692 (9th Cir. 2009); see also 20 C.F.R. §§ 404.1502, 404.1527.  "As a

15 | general rule, more weight should be given to the opinion of a treating source than to the opinion

16 | of doctors who do not treat the claimant." Lester, 81 F.3d at 830; Garrison v. Colvin, 759 F.3d

17 | 995, 1012 (9th Cir. 2014) (citing Ryan, 528 F.3d at 1198); Turner v. Comm'r of Soc. Sec., 613

18 | F.3d 1217, 1222 (9th Cir. 2010).  "The opinion of an examining physician is, in turn, entitled to

19 | greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830; Ryan, 528

20 | F.3d at 1198.

21 | "[T]he ALJ may only reject a treating or examining physician's uncontradicted medical

22 | opinion based on clear and convincing reasons."  Carmickle, 533 F.3d at 1164 (citation and

23 | internal quotation marks omitted); Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006).

24 | "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate

25 | reasons that are supported by substantial evidence in the record." Carmickle, 533 F.3d at 1164

26 | (citation and internal quotation marks omitted); Ryan, 528 F.3d at 1198; Ghanim v. Colvin, 763

27 | F.3d 1154, 1160-61 (9th Cir. 2014); Garrison, 759 F.3d at 1012.  The ALJ can meet the requisite

28 | specific and legitimate standard "by setting out a detailed and thorough summary of the facts and

1   conflicting clinical evidence, stating his interpretation thereof, and making findings." Reddick, 157

2   F.3d at 725.  The ALJ "must set forth his own interpretations and explain why they, rather than

3   the [treating or examining] doctors', are correct."  Id.

4          Although the opinion of a non-examining physician "cannot by itself constitute substantial

5   evidence that justifies the rejection of the opinion of either an examining physician or a treating

6   physician," Lester, 81 F.3d at 831, state agency physicians are "highly qualified physicians,

7   psychologists, and other medical specialists who are also experts in Social Security disability

8   evaluation."  20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i); Soc. Sec. Ruling 96-6p; Bray v.

9   Astrue, 554 F.3d 1219, 1221, 1227 (9th Cir. 2009) (the ALJ properly relied "in large part on the

10  DDS physician's assessment" in determining the claimant's RFC and in rejecting the treating

11  doctor's testimony regarding the claimant's functional limitations).  Reports of non-examining

12  medical experts "may serve as substantial evidence when they are supported by other evidence

13  in the record and are consistent with it." Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).

14

15          **2.     Dr. Loomba's Opinion**

16          Dr. Loomba, plaintiff's treating physician and a pain management specialist [see, e.g., AR

17  at 464], saw plaintiff approximately five times between April 16, 2013, and September 10, 2013,

18  for evaluation and treatment of her headaches, and neck and low back pain. [AR at 447-63.] On

19  April 16, 2013, plaintiff told Dr. Loomba that she had injured her neck and low back in an

20  automobile accident in 2009, and that she had suffered from migraine headaches since she was

21  fourteen years old. [AR at 460.] Plaintiff stated that her neck pain radiates from her neck up to

22  her head and into her shoulders. [Id.] Her low back pain radiates from the low back into the hips

23  and to the back of her thighs and knees. [Id.]  She described the neck and back pain as

24  "constant, aching, sharp, shooting, throbbing, cramping, pressure," and aggravated by physical

25  activity, standing, bending, lifting, and cold weather. [Id.] The pain, which she described at best

26  as a 7/10, and at worse 8/10, is relieved by medications, rest, lying down, and heat. [Id.] Dr.

27  Loomba found tenderness in the cervical and lumbar paraspinal muscles and cervical facet joints,

28  and noted increased pain with flexion and extension of the spine. [AR at 461-62.] He examined

1  March 7, 2012, x-rays of plaintiff's cervical spine, which showed degenerative changes with disc
2  space narrowing at C5-6 and C6-7; x-rays of the thoracic spine, which showed five degree
3  levoscoliosis; and x-rays of the lumbar spine, which were normal. [AR at 462.] He diagnosed
4  plaintiff with cervical spondylosis and lumbar spondylosis, and recommended cervical facet blocks
5  and narcotic medication. [Id.] On May 10, 2013, plaintiff underwent a facet block procedure,
6  which relieved her pain "10-20%." [AR at 457.] On June 26, 2013, plaintiff described the severity
7  of her pain as 6/10 [AR at 454], and on August 9, 2013, she described it as 7/10. [AR at 451.]
8  On September 10, 2013, plaintiff rated the severity of her pain as 6/10, and reported that the facet
9  block done on August 30, 2013, had resulted in "no pain relief." [AR at 448.] At each monthly
10  visit, Dr. Loomba noted tenderness in the cervical and lumbar paraspinal muscles, and increased
11  pain with flexion and extension of the spine. [AR at 447-63.]

12       On October 2, 2013, Dr. Loomba completed a Lumbar Spine Impairment Questionnaire
13  in which he opined that plaintiff could sit for up to three hours per day; stand for one hour per day;
14  must get up and move around every two hours for 10-15 minutes; could not stand or walk
15  continuously in a work setting; could lift or carry 0-5 pounds frequently, and 5-10 pounds
16  occasionally; would frequently experience symptoms severe enough to interfere with attention and
17  concentration; was capable of tolerating only low work stress; would be unable to keep her neck
18  in a constant position; and would be absent from work more than three times a month as a result
19  of her impairments or treatment. [AR at 467-73.] Dr. Loomba stated that he based his opinions
20  on x-rays of plaintiff's thoracic, lumbosacral, and cervical spine, on his findings of tenderness in
21  her neck and lower back, and his findings of spasm in her cervical and lumbar paraspinal
22  muscles. [AR at 467-68.] He also acknowledged her headache symptoms and diagnosis, and
23  her complaints of fatigue, weakness in her arms and legs, and muscle pain. [AR at 467, 468.]
24  He described her prognosis as "fair." [AR at 467.]

25       The ALJ gave "little weight" to the opinion of Dr. Loomba that plaintiff "was capable of less
26  than sedentary work involv[ing] sitting, standing, walking, carrying, and lifting limitations," because
27  it "is not consistent with the *above-discussed limited findings*." [AR at 126 (emphasis added).]
28  Plaintiff argues that this "rationale is patently inadequate both as a matter of fact and law," as the

1  "general reference to 'findings' discussed 'above'" is not any further identified and fails to "satisfy

2  even the law's less stringent demand for specific and legitimate rationales, much less 'clear and

3  convincing' ones." [JS at 8 (citing Tollison v. Colvin, 2015 WL 226023, at *2, n.2 (C.D. Cal. Jan.

4  16, 2015)).] Indeed, the "findings" preceding the ALJ's statement include general discussions of

5  plaintiff's credibility; the evidence pertaining to plaintiff's migraines and the ALJ's related finding

6  that plaintiff is limited as a result of her migraines to "no ladders, ropes or scaffolds; no work

7  hazards such as working at unprotected heights, working on or with dangerous or fast moving

8  machinery, or driving commercial vehicles; unskilled work; simple routine, repetitive tasks; and

9  occasional contact with the public, coworkers and supervisors"; the evidence pertaining to

10 plaintiff's neck and back impairments and the ALJ's related finding that as a result of her neck and

11 back impairments plaintiff is limited to "lifting and carrying no more than 20 pounds occasionally

12 and 10 pounds frequently; pushing and pulling within these weight limits on an occasional basis;

13 standing and walking six hours out of an eight-hour workday, with no prolonged walking greater

14 than 30 minutes at a time; sitting six hours out of an eight-hour workday with the ability to stand

15 and stretch, for one minute at the end of each hour, not to exceed 10 percent of the day; no

16 ladders, ropes or scaffolds; no work hazards such as working at unprotected heights, working on

17 or with dangerous or fast moving machinery, or driving commercial vehicles"; the evidence

18 pertaining to plaintiff's treatment with medications and physical therapy; the evidence pertaining

19 to plaintiff's alleged depression; the physical assessments by the State agency medical

20 consultants dated May 16, 2012, and March 5, 2013; and "medical source statements indicating

21 temporary inability to work." [AR at 124-26 (citations omitted).] The ALJ gave "some weight" and

22 "little weight" respectively to the State agency medical consultants' opinions, and the medical

23 source statements indicating temporary inability to work. [AR at 125-26.] Thus, it is unclear, at

24 best, whether the ALJ's reference to the "above-discussed limited findings" refers to her summary

25 of the evidence, or to the RFC limitations she found as a result of the evidence.

26        Plaintiff submits that even if it is assumed that the ALJ intended to "specifically incorporate

27 her discussion of the evidence of [plaintiff's] migraines and spinal conditions as contained in her

28 assessment of [plaintiff's] credibility, the evidence cited in that section of the decision does not

support a rejection of Dr. Loomba's physical function assessments." [JS at 7-8 (citations omitted).] Plaintiff contends that the ALJ provided three legally insufficient reasons for discounting plaintiff's statements regarding the severity of her migraines: (1) a lack of positive objective findings; (2) plaintiff's migraines "'appear[ed]' to have 'resolved' without treatment until March of 2012" and thereafter "prescribed treatment . . . actually relieved her symptoms"; and (3) plaintiff completed only four of eight planned physical therapy sessions. [JS at 9-10 (citations omitted).] She also contends the ALJ provided two additional legally insufficient rationales for discounting plaintiff's allegations regarding her spinal impairments: (1) findings on clinical examination and imaging studies did not support the degree of plaintiff's claimed limitations; and (2) medications had "helped" plaintiff's back pain. [JS at 10-11 (citations and internal quotation marks omitted).] Plaintiff concludes that "none of the [ALJ's] stated rationales . . . effectively discredits the assessments of her treating pain management physician, and . . . the rejection of his opinions is based on harmful legal error." [JS at 11.]

Defendant submits that "despite Dr. Loomba's outlying assessment, Plaintiff's medical records do not support disabling limitations due to chronic back pain or migraines." [JS at 13 (citation omitted).] Defendant discusses the medical records of plaintiff's treating physicians between 2011 and 2012 [JS at 13-16] and notes that the ALJ "discussed Plaintiff's medical records before concluding that Dr. Loomba's assessment was inconsistent with the overall record." [JS at 17 (citing AR at 123-26).] She observes that the ALJ found that plaintiff's treatment "included medications, injections, and brief physical therapy, in which Plaintiff was noted to have a 'good' prognosis," that plaintiff had "told her doctors that her medications helped," and that although there were specific examination findings where plaintiff complained of tenderness, "'[o]therwise, all other findings were largely within normal limits.'" [JS at 17 (citations omitted).] Defendant states that plaintiff "does not point to any objective evidence in the record supporting limitation beyond [the ALJ's] RFC finding," and "the objective clinical signs and findings did not support Plaintiff's allegations." [Id. (citations omitted).] Defendant further contends that Kimberly Bekemeier, M.D., plaintiff's treating physician in 2011 and 2012, "did not opine that Plaintiff had work related functional limitations," and "the other [State agency medical consultants] who opined

1 about Plaintiff's physical condition determined that Plaintiff did not even have a 'severe' physical

2 impairment, at Step Two."[5]  [JS at 19 (citing AR at 73-75, 83-85).]

3         Even assuming that the ALJ's discussion of the evidence pertaining to plaintiff's migraines

4 and neck and back impairments was intended to provide support for the ALJ's conclusion that Dr.

5 Loomba's assessment was not supported by the "limited findings" regarding those impairments,

6 the ALJ's findings are not supported by substantial evidence.

7         For instance, with respect to plaintiff's migraines, the ALJ first states that there was no

8 evidence of treatment prior to March 2012.  However, in February 2011, Dr. Bekemeier noted that

9 plaintiff presented with migraine headaches that she had been experiencing "for years," and for

10 which a diagnosis had been made "several years ago." [AR at 391.] Dr. Bekemeier reported that

11 plaintiff's current headache began three days prior to that visit and included symptoms of nausea,

12 phonophobia, and photophobia.  [AR at 391.]  She also reported that plaintiff's *previously*

13 *prescribed* medication was limited as she was only able to obtain 9 pills per month from her

14 insurance so there were often days that plaintiff still experienced headaches. [Id.] Additionally,

15 while there was evidence that some medications worked better than others to bring plaintiff some

16 degree of relief from her migraines, Dr. Bekemeier noted that insurance coverage issues

17 prevented plaintiff from obtaining more than six to nine pills at a time, which was not enough to

18 cover the frequency of her migraines.  [See, e.g., AR at 354 (noting that although Maxalt and

19 Sumatriptan work well for plaintiff, her insurance only gives her six to nine pills at a time and she

20 gets her headaches so frequently "she runs out . . . and then takes the Norco that helps some with

21 the headaches, as well as for her chronic back pain").]  Thus, it is clear that prior to plaintiff's first

22 visit to Dr. Bekemeier in February 2011, she had been receiving treatment for her migraines.

23         Nor is there evidence to support the ALJ's statement that plaintiff's migraines resolved

24

_____

25      [5]   As previously noted, the ALJ gave the opinions of the State agency medical consultants
only "some weight" with respect to their findings of certain non-severe impairments that she also
26 found to be non-severe (e.g., hiatal hernia; duodenal ulcer and gastritis, resolved with
medications; tobacco dependence; high blood pressure, controlled with medications; asthma,
27 controlled with medications; and acid reflux [AR at 121]), but she disagreed with their
determinations that plaintiff's "alleged disorder[s] of the cervical spine and migraines" were also
28 non-severe impairments.  [AR at 125.]

1  without treatment until March 2012 and that the prescribed treatment actually effectively relieved
2  her symptoms. [AR at 124.]  For instance, in February 2011, Dr. Bekemeier ordered an MRI of
3  plaintiff's brain and specifically stated that plaintiff's headaches are not relieved with headache
4  medication or narcotics and include symptoms of nausea and vomiting [AR at 395-98]; in March
5  2011, plaintiff requested a different medication for her migraines [AR at 399-402]; in April 2011,
6  plaintiff complained of headaches with fatigue, nausea, and vomiting and, after noting that plaintiff
7  does not get enough Imitrex in a month to control her headaches, Dr. Bekemeier prescribed
8  Maxalt [AR at 403-06]; in May 2011, Dr. Bekemeier noted that plaintiff's insurance had denied
9  coverage for Maxalt although the samples had given her "good relief" [AR at 407-10]; and in
10 February 2012, Dr. Bekemeier noted plaintiff's continuing incapacitating migraines but also stated
11 that a treatment authorization request had been granted and plaintiff was able to obtain Maxalt.
12 [AR at 411-14].   Then, in August and October 2012, Ravi A. Patel, M.D., plaintiff's treating
13 neurologist, noted that Norco, Sumatriptan, and propranolol had all "failed to abate" plaintiff's
14 headaches.  [AR at 388.]  Dr. Patel also noted that plaintiff reported she is headache free
15 "approximately 12 days . . . in a month and each headache last[s] at least three to four days at
16 a stretch." [AR at 389.]  There simply is no indication or evidence in the record that during the
17 period from June 2011 through February 2012, plaintiff was migraine free.

18        Finally, the ALJ's finding that plaintiff completed four of eight physical therapy sessions and
19 that  her "prognosis was listed as good" for each of those sessions, does not provide support for
20 the ALJ's determination that Dr. Loomba's opinions were unsupported by evidence in the record.
21 The record reflects, in fact, that plaintiff had discontinued physical therapy because she found the
22 sessions were *not* helpful. [AR at 355.]  Moreover, regardless of the "prognosis" for each of
23 plaintiff's stated functional goals as reflected in each of the physical therapy session notes, there
24 is no indication in any of those notes that plaintiff had come anywhere near meeting her stated
25 functional goals as a result of the treatment she received. [See AR at 340-51.]

26        Similarly, with respect to plaintiff's neck and back pain, the ALJ determined that the clinical
27 examination and imaging studies in the record do not support Dr. Loomba's opinions. [See AR
28 at 124-26.] However, as the ALJ observed, cervical test results "revealed degenerative changes

12

1 | with disc space narrowing, osteophyte formation, foraminal encroachment, and subluxation." [AR
2 | at 125.] She also noted, without citation, that although "[p]ositive objective physical exam findings
3 | included tenderness, at times, . . . evidence of tenderness was not *always* present despite
4 | [plaintiff's] complaints of chronic back pain." [AR at 125 (emphasis added).] Even assuming this
5 | statement has some truth to it -- although at least with respect to Dr. Loomba's examinations
6 | plaintiff *always* exhibited tenderness upon examination -- the ALJ points to no evidence from a
7 | treating provider or any other source suggesting that evidence of tenderness is *always* required
8 | to support a claimant's complaints of chronic back pain or a treating provider's finding of
9 | significant limitations due to chronic back pain. See Banks v. Barnhart, 434 F. Supp. 2d 800, 805
10 | (C.D. Cal. 2006) (noting that the Commissioner "must not succumb to the temptation to play
11 | doctor and make [her] own independent medical findings").

12 |      Similarly, although the ALJ suggests that because plaintiff's "gait and station were noted
13 | as normal" her chronic back pain is not so limiting as plaintiff or Dr. Loomba contend, she points
14 | to nothing to show that a claimant's gait and station must be something other than "normal" in
15 | order to support an opinion of significant physical limitations as a result of chronic back pain.
16 | Moreover, the ALJ's conclusion that plaintiff reported that her medications help relieve her back
17 | pain is, as plaintiff notes, uncontested, although nowhere in the record is there an indication that
18 | plaintiff's medications have *effectively* controlled either plaintiff's headaches or her neck and back
19 | pain and, in fact, the opposite is true. [See, e.g., AR at 354-66 (reflecting chronic and daily
20 | complaints of back pain radiating down both legs and for which Norco had been prescribed), 411-
21 | 12 (adding Cymbalta for control of back pain).] Finally, for the same reasons discussed above,
22 | the ALJ's reliance on the notation in the physical therapy notes that plaintiff's "prognosis" was
23 | "good," as support for discounting Dr. Loomba's limitations (or plaintiff's credibility), does not
24 | constitute substantial evidence to support that determination.

25 |      Based on the foregoing, the ALJ did not provide specific and legitimate reasons for
26 | discounting Dr. Loomba's opinions. Moreover, the error was not harmless -- when plaintiff's
27 | counsel asked the VE whether the hypothetical individual with the additional limitations found by
28 | Dr. Loomba would be able to perform any work, the VE confirmed that there would be no jobs

1    available.  [See AR at 60-61, 63-66.]   Remand is warranted on this issue.

2

3    **B.     SUBJECTIVE SYMPTOM TESTIMONY**

4         Plaintiff contends the ALJ failed to articulate legally sufficient reasons for rejecting plaintiff's

5    subjective symptom testimony.  [JS at 8-11, 21-22.]   Specifically, the ALJ found plaintiff's

6    "subjective complaints [to be] less than fully credible."  [AR at 126.]  She discounted plaintiff's

7    complaints of disabling migraines because of a lack of positive objective findings, the apparent

8    resolution of plaintiff's migraines without treatment until March 2012 and relief of her symptoms

9    after that date by her prescribed treatment, and because she had completed only four of eight

10   physical therapy sessions and her prognosis was deemed to be "good."  She discounted plaintiff's

11   allegations of disabling back and neck pain because clinical examination and imaging studies did

12   not support plaintiff's claimed back and neck limitations, and because medications helped

13   plaintiff's back pain.  She also discounted plaintiff's subjective symptom statements generally

14   because plaintiff's treatment had been conservative, and because "no reliable medical source

15   statement from any physician endors[ed] the extent of [plaintiff's] alleged functional limitations."

16   [AR at 124-26.]

17         "To determine whether a claimant's testimony regarding subjective pain or symptoms is

18   credible, an ALJ must engage in a two-step analysis."[6]  Lingenfelter v. Astrue, 504 F.3d 1028,

19   _____

20   [6]    On March 28, 2016, after the ALJ's assessment in this case, SSR 16-3p went into effect.
21   See SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016).  SSR 16-3p supersedes SSR 96-7p, the
      previous policy governing the evaluation of subjective symptoms. Id. at *1. SSR 16-3p indicates
22   that "we are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our
      regulations do not use this term." Id. Moreover, "[i]n doing so, we clarify that subjective symptom
23   evaluation is not an examination of an individual's character[;] [i]nstead, we will more closely follow
      our regulatory language regarding symptom evaluation." Id. Thus, the adjudicator "will not assess
24   an individual's overall character or truthfulness in the manner typically used during an adversarial
      court litigation.  The focus of the evaluation of an individual's symptoms should not be to
25   determine whether he or she is a truthful person." Id. at *10. The ALJ is instructed to "consider
      all of the evidence in an individual's record," "to determine how symptoms limit ability to perform
26   work-related activities." Id. at *2. Here, the ALJ's 2014 decision was issued before March 28,
      2016, when SSR 16-3p became effective, and there is no binding precedent interpreting this new
27   ruling including whether it applies retroactively. Compare Ashlock v. Colvin, 2016 WL 3438490,
28                                                                                 (continued...)

1 ‖ 1035-36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented
2 ‖ objective medical evidence of an underlying impairment 'which could reasonably be expected to
3 ‖ produce the pain or other symptoms alleged.'" Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d
4 ‖ 1090, 1102 (9th Cir. 2014) (quoting Lingenfelter, 504 F.3d at 1036) (internal quotation marks
5 ‖ omitted). If the claimant meets the first test, and the ALJ does not make a "finding of malingering
6 ‖ based on affirmative evidence thereof" (Robbins, 466 F.3d at 883), the ALJ must "evaluate the
7 ‖ intensity and persistence of [the] individual's symptoms . . . and determine the extent to which
8 ‖ [those] symptoms limit his . . . ability to perform work-related activities . . . ." SSR 16-3p, 2016 WL
9 ‖ 1119029, at *4. An ALJ must provide specific, clear and convincing reasons for rejecting a
10 ‖ claimant's testimony about the severity of his symptoms. Treichler, 775 F.3d at 1102; Benton v.
11 ‖ Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003).

12 ‖       Plaintiff argues that none of the reasons provided by the ALJ for discounting plaintiff's
13 ‖ subjective symptom statements is clear and convincing, and defendant counters those arguments.
14 ‖ Because the matter is being remanded for reconsideration of the medical opinions, and the ALJ
15 ‖ on remand as a result must reconsider plaintiff's RFC in light of the record evidence, on remand
16 ‖ the ALJ must also reconsider plaintiff's subjective symptom testimony and, based on her
17 ‖ reconsideration of plaintiff's RFC, and pursuant to SSR 16-3, provide specific, clear and
18 ‖ convincing reasons for discounting plaintiff's subjective symptom testimony if warranted. See
19 ‖ Treichler, 775 F.3d at 1103 (citation omitted) (the "ALJ must identify the testimony that was not
20 ‖ credible, and specify 'what evidence undermines the claimant's complaints.'"); Brown-Hunter, 806

21 ‖ _____

22 ‖   [6](...continued)
23 ‖ at *5 n.1 (W.D. Wash. June 22, 2016) (declining to apply SSR 16-3p to an ALJ decision issued prior to the effective date), with Lockwood v. Colvin, 2016 WL 2622325, at *3 n.1 (N.D. Ill. May 9, 2016) (applying SSR 16-3p retroactively to a 2013 ALJ decision); see also Smolen, 80 F.3d at
24 ‖ 1281 n.1 (9th Cir. 1996) ("We need not decide the issue of retroactivity [as to revised regulations] because the new regulations are consistent with the Commissioner's prior policies and with prior
25 ‖ Ninth Circuit case law") (citing Pope v. Shalala, 998 F.2d 473, 483 (7th Cir. 1993) (because regulations were intended to incorporate prior Social Security Administration policy, they should
26 ‖ be applied retroactively)). The Court notes that SSR 16-3p on its face states that it is intended
27 ‖ only to "clarify" the existing regulations. However, because neither party specifically contends that SSR 16-3p should apply herein, the Court need not resolve the retroactivity issue.
28 ‖ Notwithstanding the foregoing, SSR 16-3p shall apply on remand.

F.3d at 493-94 (the ALJ must identify the testimony he found not credible and "link that testimony to the particular parts of the record" supporting his non-credibility determination).

## VI.

## **REMAND FOR FURTHER PROCEEDINGS**

The Court has discretion to remand or reverse and award benefits. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. See Lingenfelter, 504 F.3d at 1041; Benecke v. Barnhart, 379 F.3d 587, 595-96 (9th Cir. 2004). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. See Benecke, 379 F.3d at 593-96.

In this case, there are outstanding issues that must be resolved before a final determination can be made. In an effort to expedite these proceedings and to avoid any confusion or misunderstanding as to what the Court intends, the Court will set forth the scope of the remand proceedings. First, because the ALJ failed to provide specific and legitimate reasons for discounting the opinions of Dr. Loomba, the ALJ on remand shall reassess those opinions and, if warranted, provide specific and legitimate reasons for discounting his opinions. Next, the ALJ on remand, in accordance with SSR 16-3p, shall reassess plaintiff's subjective allegations and either credit her testimony as true, or provide specific, clear and convincing reasons, supported by substantial evidence in the case record, for discounting or rejecting any testimony. Finally, the ALJ shall reassess plaintiff's RFC and determine, at step five, with the assistance of a VE if necessary, whether there are jobs existing in significant numbers in the national economy that plaintiff can still perform.[7]

---

[7]   Nothing herein is intended to disrupt the ALJ's step four finding that plaintiff is unable to return to her past relevant work.

1                                             **VII.**

2                                     **<u>CONCLUSION</u>**

3       **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the

4 decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for

5 further proceedings consistent with this Memorandum Opinion.

6       **IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the

7 Judgment herein on all parties or their counsel.

8       **This Memorandum Opinion and Order is not intended for publication, nor is it**

9 **intended to be included in or submitted to any online service such as Westlaw or Lexis.**

10

11 DATED:  March 2̲9̲ , 2017

12                                                PAUL L. ABRAMS

                                    UNITED STATES MAGISTRATE JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28